UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ONEBEACON AMERICA INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>       v.<br><br>TRANSATLANTIC REINSURANCE COMPANY,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:14-cv-14067

## COMPLAINT

Plaintiff OneBeacon America Insurance Company ("OneBeacon"), as successor to Commercial Union Insurance Company, as and for its complaint against Transatlantic Reinsurance Company ("Transatlantic"), alleges as follows:

## NATURE OF ACTION

1.      This action arises from the failure of Transatlantic to honor its contractual obligations to make reinsurance payments to OneBeacon.[1]  Transatlantic reinsured OneBeacon and thereby promised to reimburse OneBeacon for a portion of insurance claim payments OneBeacon makes under certain direct insurance policies OneBeacon sold to corporate insureds. Those insurance claim payments have been made by OneBeacon.  Transatlantic has been billed for its portion of those payments.  Yet, Transatlantic refuses to pay OneBeacon in breach of its contract obligations.  Beyond breaching various contracts, Transatlantic has engaged in unfair

---

[1] Reinsurance is the insurance of one insurer (the "reinsured") by another insurer (the "reinsurer") by means of which the reinsured is indemnified for loss by the reinsurer under insurance policies issued by the reinsured to the public.

business practices that have damaged OneBeacon.  After making reinsurance payments to

OneBeacon under the contracts for many years, Transatlantic stopped making payment under the

reinsurance contracts in order to harm OneBeacon, to interfere with OneBeacon's relationship

with non-parties National Indemnity Company ("National Indemnity") and Resolute

Management, Inc. ("Resolute"), and to enhance Transatlantic's bargaining power in unrelated

disputes with those non-parties and others.  For these breaches of contract and the unfair and

inequitable conduct by Transatlantic, OneBeacon should be awarded compensatory,

consequential and treble damages, and its costs, expenses and attorneys' fees in this action.

## PARTIES

2.       Plaintiff OneBeacon is a Pennsylvania corporation and a Massachusetts-licensed

insurer that maintains its principal place of business in Minnesota. Prior to its re-domestication in

Pennsylvania in 2014, OneBeacon was an insurance company organized under the laws of the

Commonwealth of Massachusetts.

3.       Defendant Transatlantic is a New York corporation and a Massachusetts-licensed

insurer that maintains its principal place of business in New York.  During the time the contracts

at issue were sold by Transatlantic to OneBeacon, Transatlantic was majority owned by

American International Group ("AIG").

## JURISDICTION AND VENUE

4.       This is an action, in part, for declaratory judgment pursuant to the Declaratory

Judgment Act, 28 U.S.C. § 2201(a), for the purpose of determining questions of actual

controversy between the parties.

5.       This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), as there is

complete diversity of citizenship between the parties, and the amount in controversy exceeds

$75,000, exclusive of interest and costs.

6.     This Court has personal jurisdiction over defendant Transatlantic because it is a

Massachusetts-licensed insurance company and has conducted continuous and substantial

business in Massachusetts, including but not limited to performing the contracts at issue in this

action in Massachusetts.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because

defendant Transatlantic resides for the purpose of venue in Massachusetts, and pursuant to 28

U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the

claims occurred in Massachusetts.

## FACTUAL BACKGROUND

8.     A reinsurance contract is an arrangement whereby one insurance company,

known as the "ceding company" or the "cedent," obtains insurance from another insurer, known

as the "reinsurer," in order to transfer some or all of the insured risk the cedent has assumed.  In

this case, OneBeacon is the cedent, and Transatlantic is the reinsurer.

9.     "Facultative reinsurance" applies to a single policy or risk insured by a cedent.

Facultative reinsurance is generally memorialized in a written contract known as a facultative

certificate.

10.     When reinsurance is written on a "contributing excess" basis, the reinsurer is

obligated to pay to the cedent a proportional amount of the cedent's liability to its insured.

### The 1981 84 Lumber Certificate of Facultative Reinsurance

11.     OneBeacon insurance policy number CY 9402-018 provided umbrella liability

insurance coverage to 84 Lumber Company for the period November 30, 1981 to November 30,

1982 (the "1981 84 Lumber Policy").  The 1981 84 Lumber Policy attaches excess of underlying

insurance.  The limit of the 1981 84 Lumber Policy is $15,000,000 each occurrence and in the aggregate where applicable.

12.     OneBeacon entered into a facultative reinsurance contract with Transatlantic, certificate number C2500189, pursuant to which Transatlantic agreed to reinsure the 1981 84 Lumber Policy (the "1981 84 Lumber Certificate").  Subject to the terms and conditions of the 1981 84 Lumber Certificate, Transatlantic accepted a 50% part of $4,000,000 excess of $1,000,000 share of reinsurance of the 1981 84 Lumber Policy.  The 1981 84 Lumber Certificate was issued on a contributing excess basis and Transatlantic received a premium in exchange for its agreement to reinsure OneBeacon.  The 1981 84 Lumber Certificate provides that Transatlantic's liability shall follow OneBeacon's liability in accordance with the terms and conditions of the 1981 84 Lumber Policy.  The 1981 84 Lumber Certificate obligates Transatlantic to promptly reimburse OneBeacon for Transatlantic's share of the loss and loss expense incurred under the 1981 84 Lumber Policy, including the costs of investigating and adjusting claims, legal costs, and interest.

13.     OneBeacon has paid loss and loss expense under the 1981 84 Lumber Policy in excess of the $1,000,000 attachment point of the 1981 84 Lumber Certificate.  OneBeacon has billed Transatlantic for its share of that loss and loss expense from offices in Massachusetts.  The balance due and owing from Transatlantic under the 1981 84 Lumber Certificate is approximately $907,440.

**The 1982 84 Lumber Certificate of Facultative Reinsurance**

14.     OneBeacon insurance policy number CY 9402-024 provided excess liability insurance coverage to 84 Lumber Company for the period November 30, 1982 to November 30, 1983 (the "1982 84 Lumber Policy").  The 1982 84 Lumber Policy attaches excess of underlying

insurance.  The limit of the 1982 84 Lumber Policy is $15,000,000 each occurrence and in the aggregate where applicable.

15.     OneBeacon entered into a facultative reinsurance contract with Transatlantic, certificate number C2500747, pursuant to which Transatlantic agreed to reinsure the 1982 84 Lumber Policy (the "1982 84 Lumber Certificate").  Subject to the terms and conditions of the 1982 84 Lumber Certificate, Transatlantic accepted a $4,000,000 part of $14,000,000 (or 28.571%) excess of $1,000,000 share of reinsurance of the 1982 84 Lumber Policy.  The 1982 84 Lumber Certificate was issued on a contributing excess basis and Transatlantic received a premium in exchange for its agreement to reinsure OneBeacon.  The 1982 84 Lumber Certificate provides that Transatlantic's liability shall follow OneBeacon's liability in accordance with the terms and conditions of the 1982 84 Lumber Policy.  The 1982 84 Lumber Certificate obligates Transatlantic to promptly reimburse OneBeacon for Transatlantic's share of the loss and loss expense incurred under the 1982 84 Lumber Policy, including the costs of investigating and adjusting claims, legal costs, and interest.

16.     OneBeacon has paid loss and loss expense under the 1982 84 Lumber Policy in excess of the $1,000,000 attachment point of the 1982 84 Lumber Certificate.  OneBeacon has billed Transatlantic for its share of that loss and loss expense from offices in Massachusetts.  The balance due and owing from Transatlantic under the 1982 84 Lumber Certificate is approximately $518,529.

**The 1983 84 Lumber Certificate of Facultative Reinsurance**

17.     OneBeacon insurance policy number CY 9402-027 provided umbrella liability insurance coverage to 84 Lumber Company for the period November 30, 1983 to January 1, 1985 (the "1983 84 Lumber Policy").  The 1983 84 Lumber Policy attaches excess of underlying

insurance.  The limit of the 1983 84 Lumber Policy is $15,000,000 each occurrence and in the aggregate where applicable.

18.    OneBeacon entered into a facultative reinsurance contract with Transatlantic, certificate number C2501151, pursuant to which Transatlantic agreed to reinsure the 1983 84 Lumber Policy (the "1983 84 Lumber Certificate").  Subject to the terms and conditions of the 1983 84 Lumber Certificate, Transatlantic accepted a $5,000,000 part of $14,000,000 (or 35.714%) excess of $1,000,000 share of reinsurance of the 1983 84 Lumber Policy.  The 1983 84 Lumber Certificate was issued on a contributing excess basis and Transatlantic received a premium in exchange for its agreement to reinsure OneBeacon.  The 1983 84 Lumber Certificate provides that Transatlantic's liability "shall follow [OneBeacon's] liability in accordance with the terms and conditions of the policy reinsured hereunder."  The 1983 84 Lumber Certificate obligates Transatlantic to "promptly reimburse [OneBeacon] for [Transatlantic's] share of the loss and loss expense" incurred under the 1983 84 Lumber Policy, including the costs of investigating and adjusting claims, legal costs, and interest.

19.    OneBeacon has paid loss and loss expense under the 1983 84 Lumber Policy in excess of the $1,000,000 attachment point of the 1983 84 Lumber Certificate.  OneBeacon has billed Transatlantic for its share of that loss and loss expense from offices in Massachusetts.  The balance due and owing from Transatlantic under the 1983 84 Lumber Certificate is approximately $649,839.

**The 1981 Yarway Certificate of Facultative Reinsurance**

20.    OneBeacon insurance policy number CY-9363-002 provided umbrella liability insurance coverage to Yarway Corporation for the period October 1, 1981 to October 1, 1982 (the "1981 Yarway Policy").  The 1981 Yarway Policy attaches excess of underlying insurance.

The limit of the 1981 Yarway Policy is $1,000,000 each occurrence and in the aggregate where applicable.

21.     OneBeacon entered into a facultative reinsurance contract with Transatlantic, certificate number C250059, pursuant to which Transatlantic agreed to reinsure the 1981 Yarway Policy (the "1981 Yarway Certificate").  Subject to the terms and conditions of the 1981 Yarway Certificate, Transatlantic accepted a $250,000 part of $750,000 excess of $250,000 share of reinsurance of the 1981 Yarway Policy.  The 1981 Yarway Certificate was issued on a contributing excess basis and Transatlantic received a premium in exchange for its agreement to reinsure OneBeacon.  The 1981 Yarway Certificate provides that Transatlantic's liability shall follow OneBeacon's liability in accordance with the terms and conditions of the 1981 Yarway Policy.  The 1981 Yarway Certificate obligates Transatlantic to promptly reimburse OneBeacon for Transatlantic's share of the loss and loss expense incurred under the 1981 Yarway Policy, including the costs of investigating and adjusting claims, legal costs, and interest.

22.     OneBeacon has paid loss and loss expense under the 1981 Yarway Policy in excess of the $250,000 attachment point of the 1981 Yarway Certificate.  OneBeacon has billed Transatlantic for its share of that loss and loss expense from offices in Massachusetts.  The balance due and owing from Transatlantic under the 1981 Yarway Certificate is approximately $44,369.

**The Second 1981 Yarway Certificate of Facultative Reinsurance**

23.     OneBeacon insurance policy number CY-9363-006 provided umbrella liability insurance coverage to Yarway Corporation for the period October 1, 1981 to October 1, 1982 (the "Second 1981 Yarway Policy").  The Second 1981 Yarway Policy attaches excess of underlying insurance.  The limit of the Second 1981 Yarway Policy is $10,000,000 each

occurrence and in the aggregate where applicable.

24.     OneBeacon entered into a facultative reinsurance contract with Transatlantic, certificate number 530070082, pursuant to which Transatlantic agreed to reinsure the Second 1981 Yarway Policy (the "Second 1981 Yarway Certificate").  Subject to the terms and conditions of the Second 1981 Yarway Certificate, Transatlantic accepted a 50% part of $5,000,000 excess of $5,000,000 share of reinsurance of the Second 1981 Yarway Policy.  The Second 1981 Yarway Certificate was issued on a contributing excess basis and Transatlantic received a premium in exchange for its agreement to reinsure OneBeacon.  The Second 1981 Yarway Certificate provides that Transatlantic's liability shall follow OneBeacon's liability in accordance with the terms and conditions of the Second 1981 Yarway Policy.  The Second 1981 Yarway Certificate obligates Transatlantic to promptly reimburse OneBeacon for Transatlantic's share of the loss and loss expense incurred under the Second 1981 Yarway Policy, including the costs of investigating and adjusting claims, legal costs, and interest.

25.     OneBeacon has paid loss and loss expense under the Second 1981 Yarway Policy in excess of the $5,000,000 attachment point of the Second 1981 Yarway Certificate. OneBeacon has billed Transatlantic for its share of that loss and loss expense from offices in Massachusetts.  The balance due and owing from Transatlantic under the Second 1981 Yarway Certificate is approximately $22,164.

### The 1982 Yarway Certificate of Facultative Reinsurance

26.     OneBeacon insurance policy number CY-9363-010 provided umbrella liability insurance coverage to Yarway Corporation for the period October 1, 1982 to October 1, 1983 (the "1982 Yarway Policy").  The 1982 Yarway Policy attaches excess of underlying insurance. The limit of the 1982 Yarway Policy is $20,000,000 each occurrence and in the aggregate where

applicable.

27.     OneBeacon entered into a facultative reinsurance contract with Transatlantic, certificate number C2500706, pursuant to which Transatlantic agreed to reinsure the 1982 Yarway Policy (the "1982 Yarway Certificate").  Subject to the terms and conditions of the 1982 Yarway Certificate, Transatlantic accepted a 20% part of $10,000,000 excess of $10,000,000 share of reinsurance of the 1982 Yarway Policy.  The 1982 Yarway Certificate was issued on a contributing excess basis and Transatlantic received a premium in exchange for its agreement to reinsure OneBeacon.  The 1982 Yarway Certificate provides that Transatlantic's liability shall follow OneBeacon's liability in accordance with the terms and conditions of the 1982 Yarway Policy.  The 1982 Yarway Certificate obligates Transatlantic to promptly reimburse OneBeacon for Transatlantic's share of the loss and loss expense incurred under the 1982 Yarway Policy, including the costs of investigating and adjusting claims, legal costs, and interest.

28.     OneBeacon has paid loss and loss expense under the 1982 Yarway Policy in excess of the $10,000,000 attachment point of the 1982 Yarway Certificate.  OneBeacon has billed Transatlantic for its share of that loss and loss expense from offices in Massachusetts.  The balance due and owing from Transatlantic under the 1982 Yarway Certificate is approximately $8,865.

### OneBeacon's Loss Payments and Reinsurance Billing to Transatlantic

29.     In or about 2001, National Indemnity was appointed to adjust, handle, settle, pay, compromise or repudiate certain asbestos-related claims on behalf of OneBeacon through a publicly disclosed loss portfolio transfer reinsurance transaction (the "LPT").  National Indemnity was also appointed to collect reinsurance recoveries on OneBeacon's behalf related to those claims from, among others, Transatlantic.  The LPT authorized National Indemnity to

employ its affiliate, Resolute, to carry out its duties on behalf of OneBeacon. Upon information and belief, Transatlantic has had knowledge of the LPT since 2001. At all times relevant to this complaint, Resolute has performed its work on behalf of OneBeacon, including the collection of reinsurance recoveries from Transatlantic, in Massachusetts.

30. Over the years, Resolute sent bills to Transatlantic from Massachusetts for loss and loss expense in accordance with the terms of the facultative certificates discussed above. Transatlantic has paid millions of dollars of invoices issued by Resolute on OneBeacon's behalf since the early 2000's. Those payments stopped in 2012 after Alleghany Corporation ("Alleghany") acquired and became the sole owner of Transatlantic.

31. By March 2012, Alleghany learned that Transatlantic maintained substantial liabilities to its former owner, AIG. Alleghany then set out to rid itself of those liabilities by creating a series of disputes with AIG arising from and related to AIG's former ownership of Transatlantic. Many of those disputes relate to AIG's new commercial relationship with National Indemnity. AIG purchased additional reinsurance from National Indemnity, and Transatlantic is using that reinsurance as an excuse to shed itself of its unwanted AIG liabilities.

32. OneBeacon is informed and believes that it is a casualty of Transatlantic's battles with AIG. Specifically, even though OneBeacon purchased additional reinsurance from National Indemnity more than a decade ago, and Transatlantic has been meeting its multi-million dollar obligations to OneBeacon for years, Transatlantic now claims that the additional reinsurance provided by National Indemnity for the last 13 years relieves Transatlantic of its obligations to continue to make payments to OneBeacon. By attacking National Indemnity's business partners, including OneBeacon, Alleghany and Transatlantic believes they can gain leverage in disputes with AIG.

33.     OneBeacon is informed and believes that despite having promised to honor its obligations to OneBeacon as reinsurer, Transatlantic stopped making the payments required by the facultative certificates in 2012, without justification, to serve the interests of and with the knowledge, consent, and direction of Alleghany's executives as part of their battles with AIG. OneBeacon believes Transatlantic will continue to refuse to pay future billings for those same reasons.

34.     OneBeacon is informed and believes that Transatlantic stopped paying billings sent under the OneBeacon facultative certificates because Alleghany and Transatlantic now have a variety of disputes and adverse commercial relationships with National Indemnity and Resolute's client AIG.  Specifically, Transatlantic has abruptly stopped making payments it owes OneBeacon in Massachusetts under various facultative reinsurance contracts for the dominant purposes of (i) causing harm to National Indemnity's and Resolute's relationship with OneBeacon, (ii) impeding National Indemnity's and Resolute's abilities to perform their contractual obligations to OneBeacon, and/or (iii) forcing OneBeacon to commute Transatlantic's obligations at a below-market and irrational price; and (iv) gaining leverage in a dispute with non-party AIG.  Transatlantic effected these purposes and engaged in its improper conduct by communicating to Resolute in Massachusetts. At the time of Transatlantic's improper conduct, OneBeacon was a Massachusetts corporation.

35.     Transatlantic does not have a good faith basis or legal justification for withholding payment to and harming OneBeacon.  Transatlantic's behavior is particularly egregious when considered in the context of the mores of the reinsurance industry, an industry which is guided by, and relies heavily upon, the principle of "utmost good faith."  Transatlantic believes that withholding payment on OneBeacon's reinsurance claims without legal justification

is an acceptable means by which to serve other, unlawful interests.  Transatlantic's conduct falls

well within the established definition of unfair competition and unfair and deceptive business

practices.

## COUNT ONE
### (Breach of Contract – 1981 84 Lumber Certificate)

36.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1

through 35 above as if set forth in full in Count One.

37.     OneBeacon and Transatlantic entered into the 1981 84 Lumber Certificate.

38.     OneBeacon has fully performed its obligations under the 1981 84 Lumber

Certificate and has properly billed Transatlantic for amounts due thereunder.

39.     In breach of the 1981 84 Lumber Certificate, Transatlantic has refused to pay

OneBeacon's billings.

40.     As a result of Transatlantic's breach of the 1981 84 Lumber Certificate,

OneBeacon has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT TWO
### (Declaratory Judgment – 1981 84 Lumber Certificate)

41.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1

through 35 above as if set forth in full in Count Two.

42.     An actual controversy exists with respect to the parties' rights under the 1981 84

Lumber Certificate, including but not limited to, the obligations of Transatlantic to pay past,

current and future billings in a timely manner.

43.     OneBeacon is entitled to a declaration of its rights under the 1981 84 Lumber

Certificate.

## COUNT THREE
### (Breach of Contract – 1982 84 Lumber Certificate)

44.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Three.

45.     OneBeacon and Transatlantic entered into the 1982 84 Lumber Certificate.

46.     OneBeacon has fully performed its obligations under the 1982 84 Lumber Certificate and has properly billed Transatlantic for amounts due thereunder.

47.     In breach of the 1982 84 Lumber Certificate, Transatlantic has refused to pay OneBeacon's billings.

48.     As a result of Transatlantic's breach of the 1982 84 Lumber Certificate, OneBeacon has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT FOUR
### (Declaratory Judgment – 1982 84 Lumber Certificate)

49.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Four.

50.     An actual controversy exists with respect to the parties' rights under the 1982 84 Lumber Certificate, including but not limited to, the obligations of Transatlantic to pay past, current and future billings in a timely manner.

51.     OneBeacon is entitled to a declaration of its rights under the 1982 84 Lumber Certificate.

## COUNT FIVE
### (Breach of Contract – 1983 84 Lumber Certificate)

52.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Five.

53.     OneBeacon and Transatlantic entered into the 1983 84 Lumber Certificate.

54.     OneBeacon has fully performed its obligations under the 1983 84 Lumber Certificate and has properly billed Transatlantic for amounts due thereunder.

55.     In breach of the 1983 84 Lumber Certificate, Transatlantic has refused to pay OneBeacon's billings.

56.     As a result of Transatlantic's breach of the 1983 84 Lumber Certificate, OneBeacon has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT SIX
### (Declaratory Judgment – 1983 84 Lumber Certificate)

57.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Six.

58.     An actual controversy exists with respect to the parties' rights under the 1983 84 Lumber Certificate, including but not limited to, the obligations of Transatlantic to pay past, current and future billings in a timely manner.

59.     OneBeacon is entitled to a declaration of its rights under the 1983 84 Lumber Certificate.

## COUNT SEVEN
### (Breach of Contract – 1981 Yarway Certificate)

60.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Seven.

61.     OneBeacon and Transatlantic entered into the 1981 Yarway Certificate.

62.     OneBeacon has fully performed its obligations under the 1981 Yarway Certificate and has properly billed Transatlantic for amounts due thereunder.

63.     In breach of the 1981 Yarway Certificate, Transatlantic has refused to pay OneBeacon's billings.

64.     As a result of Transatlantic's breach of the 1981 Yarway Certificate, OneBeacon

has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT EIGHT
### (Declaratory Judgment – 1981 Yarway Certificate)

65.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Eight.

66.     An actual controversy exists with respect to the parties' rights under the 1981 Yarway Certificate, including but not limited to, the obligations of Transatlantic to pay past, current and future billings in a timely manner.

67.     OneBeacon is entitled to a declaration of its rights under the 1981 Yarway Certificate.

## COUNT NINE
### (Breach of Contract – Second 1981 Yarway Certificate)

68.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Nine.

69.     OneBeacon and Transatlantic entered into the Second 1981 Yarway Certificate.

70.     OneBeacon has fully performed its obligations under the Second 1981 Yarway Certificate and has properly billed Transatlantic for amounts due thereunder.

71.     In breach of the Second 1981 Yarway Certificate, Transatlantic has refused to pay OneBeacon's billings.

72.     As a result of Transatlantic's breach of the Second 1981 Yarway Certificate, OneBeacon has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT TEN
### (Declaratory Judgment – Second 1981 Yarway Certificate)

73.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Ten.

74.     An actual controversy exists with respect to the parties' rights under the Second 1981 Yarway Certificate, including but not limited to, the obligations of Transatlantic to pay past, current and future billings in a timely manner.

75.     OneBeacon is entitled to a declaration of its rights under the Second 1981 Yarway Certificate.

## COUNT ELEVEN
### (Breach of Contract – 1982 Yarway Certificate)

76.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Eleven.

77.     OneBeacon and Transatlantic entered into the 1982 Yarway Certificate.

78.     OneBeacon has fully performed its obligations under the 1982 Yarway Certificate and has properly billed Transatlantic for amounts due thereunder.

79.     In breach of the 1982 Yarway Certificate, Transatlantic has refused to pay OneBeacon's billings.

80.     As a result of Transatlantic's breach of the 1982 Yarway Certificate, OneBeacon has suffered and continues to suffer damages in an amount to be proven at trial.

## COUNT TWELVE
### (Declaratory Judgment – 1982 Yarway Certificate)

81.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Twelve.

82.     An actual controversy exists with respect to the parties' rights under the 1982 Yarway Certificate, including but not limited to, the obligations of Transatlantic to pay past, current and future billings in a timely manner.

83.     OneBeacon is entitled to a declaration of its rights under the 1982 Yarway Certificate.

16

<div align="center">

**COUNT THIRTEEN**
**(Mass. G.L. c. 93A – Unfair or Deceptive Acts or Practices)**

</div>

84.     Plaintiff repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 35 above as if set forth in full in Count Thirteen.

85.     This is a cause of action for monetary relief pursuant to Mass. G.L. c. 93A, §§ 2, 11.  Plaintiff seeks damages for the loss of money caused by Transatlantic's unfair or deceptive acts or practices.

86.     Plaintiff was at all relevant times engaged in the conduct of business or commerce. Massachusetts law prohibits unfair business practices, inequitable market conduct and unfair competition.

87.     When a party acts in disregard of contractual arrangements with the intent of securing a benefit or an advantage for itself it commits an unfair business practice and engages in inequitable market conduct and unfair competition.

88.     When a party deliberately withholds payment under a contract to coerce behavior or enhance bargaining power, it commits an unfair business practice and engages in inequitable market conduct.

89.     When a party, without any justifiable basis for delaying payments, withholds payments in order to coerce the resolution of related and unrelated disputes, it commits an unfair business practice and engages in inequitable market conduct and unfair competition.

90.     Defendant has committed the foregoing unfair business practices (among others) and engaged in the foregoing inequitable market conduct and unfair competition (among other things).

91.     The unfair business practices, inequitable market conduct and unfair competition took place primarily and substantially within the Commonwealth of Massachusetts.

<div align="center">

17

</div>

92.     As a result of Defendant's purposeful, unfair and deceptive acts, Plaintiff has been injured and suffered loss and damages and will continue to suffer injury, loss and damages in an amount to be proven at trial.

93.     As a result of Defendant's willful and knowing refusal to honor its obligations, as well as its intentional efforts to harm Plaintiff, Plaintiff has suffered financial harm and is entitled to treble and exemplary damages and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, OneBeacon respectfully requests that the Court enter judgment in its favor and against Transatlantic as follows:

(a) A judgment that Transatlantic has breached each of the above-referenced facultative certificates;

(b) A declaration of OneBeacon's rights under the facultative certificates, including that Transatlantic is obligated to pay each billing under each facultative certificate within 30 days of receipt;

(c) An award of money damages, plus statutory interest with respect to OneBeacon's outstanding billings and all billings through the date of a final judgment;

(d) An award of compensatory, consequential and exemplary damages in an amount to be determined at trial;

(e) A judgment that Transatlantic has engaged in unfair and deceptive trade practices in violation of Mass. G.L. c. 93A;

(f) An award of treble damages for compensatory, consequential and multiple damages incurred by OneBeacon as a result of Transatlantic's willful and knowing violation of Mass. G.L. c. 93A;

(g) Reasonable costs and fees incurred in bringing this action; and

(h) Such other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

<div style="margin-left:40%">

**ONEBEACON AMERICA INSURANCE COMPANY**,
By its attorneys,


 _/s/ Kevin J. O'Connor_____
Kevin J. O'Connor, BBO No. 555249
koconnor@hermesnetburn.com
Michael S. Batson, BBO No. 648151
mbatson@hermesnetburn.com
HERMES, NETBURN, O'CONNOR
      & SPEARING, P.C.
265 Franklin Street, Seventh Floor
Boston, MA  02110-3113
Tel:  (617) 728-0050
Fax:  (617) 728-0052

</div>

Dated:  November 3, 2014

G:\DOCS\KJO\Resolute\Transatlantic II\Pleadings\Complaint.docx